**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **FELISHA BROOKS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-19-2315** |
| **TVONE, LLC,** *et al.,* | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this action, Plaintiff Felisha Brooks brings several tort claims arising from an episode of the television show "Fatal Attraction" that depicted the murder of her late husband, Michael Brooks. Plaintiff has named as Defendants TVOne, LLC ("TVOne"), which owns the network that airs the show, Jupiter Entertainment ("Jupiter"), which produces it, and Todd Moss ("Moss"), who produced the episode at issue. Plaintiff's claims include defamation, negligence, invasion of privacy, and intentional infliction of emotional distress. Defendants have moved for an extension of time to respond to the Complaint, to dismiss the action, and for leave to file a DVD of the episode as an exhibit to their motion to dismiss. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, Defendants' request for an extension and motion to dismiss will be granted and the motion to file the DVD will be denied as moot.

I.      **BACKGROUND[1]**

According to Plaintiff's Amended Complaint, in or about March 2014, TVOne aired an episode of "Fatal Attraction," a "nationally syndicated television show," entitled "If I Can't Have

---

[1] Unless otherwise stated, these facts are taken from Plaintiff's Amended Complaint, ECF No. 7, and are presumed to be true.

You." ECF No. 7 ¶¶ 13, 43. The episode depicted the murder of Plaintiff's late husband and detailed his extramarital relationship with another woman, Dorothy Washington, as well as Mrs. Washington's relationship with her husband, Jeffery Washington. *Id.* ¶¶ 14–15. Jupiter and Moss hired actors to portray both couples. *Id.* ¶ 16. The episode repeatedly indicated that "Mr. Brooks was miserable in his marriage with Plaintiff" and stated that Brooks and Plaintiff were separated and ultimately divorced, leaving "Mr. Brooks finally 'free to live his life' apart from the Plaintiff." *Id.* ¶¶ 17–18. There was no mention that Plaintiff and Mr. Brooks had a minor child. *Id.* ¶ 20.

The episode depicts a deepening relationship between Mr. Brooks and Mrs. Washington until Mr. Brooks is murdered. *Id.* ¶¶ 21–22. Plaintiff asserts that "Defendants immediately suggest Plaintiff may be the suspect" and "could have easily become enraged after finding out about the Washington-Brooks affair, and killed Mr. Brooks in a jealous fury." *Id.* ¶¶ 23–24. Eventually, however, the episode "abandon[s] this theory" and turns to the Washingtons, depicting Jeffery Washington striking his wife with a pistol before shooting and killing Mr. Brooks in May 2009 at an apartment complex. *Id.* ¶¶ 25–26. The episode finally shows Mr. Washington's trial and conviction for the death of Mr. Brooks. *Id.* ¶ 27.

The Amended Complaint asserts that Defendants never interviewed or otherwise communicated with Plaintiff, conducted little to no investigation concerning the truth of the events depicted, and produced an episode containing multiple falsehoods. *Id.* ¶¶ 37, 41. First, Plaintiff and Mr. Brooks were neither divorced nor separated at the time of his death. *Id.* ¶¶ 33, 53. Further, Mr. Brooks and Mrs. Washington met on Saturday, July 12, 2008, rather than July 8, 2008 as depicted in the episode, a "critical" distinction "because this means that Brooks and Washington knew each other for even less than the Defendants publicly stated." *Id.* ¶ 34. Finally,

the episode included a purported reenactment of a scene in which Plaintiff visited a police station and then entered a vehicle with Mr. Brooks. *Id.* ¶ 55. The Amended Complaint alleges that the depicted events never took place and that the scene "made no sense" because it "made Plaintiff appear as a suspect." *Id.*

Plaintiff alleges that "the show continues to air via [TVOne's] OnDemand features or other media outlets" and that "Defendant plac[ed] the episode on its website." *Id.* ¶¶ 44, 61. According to Plaintiff, the episode has "severely harmed" her "reputation as an individual and a professional" and "has been traumatic to the minor child shared in common with Mr. Brooks; both the minor child and the Plaintiff are in individual or family therapy." *Id.* ¶¶ 35–36. The episode has "affected Plaintiff's professional reputation, credibility, and caused psychological and emotional trauma and suffering." *Id.* ¶ 44.

Plaintiff filed a Complaint on August 12, 2019, ECF No. 1, and an Amended Complaint on August 14, 2019, ECF No. 7. On September 23, 2019, Defendants filed a Motion for Extension of Time to Answer or Otherwise Respond to the Amended Complaint, which remains pending. ECF No. 23. Plaintiff filed a brief in Opposition the same day. ECF No. 25. Defendants filed a Reply on September 24, 2019, ECF No. 26, and Plaintiff filed an additional brief in opposition, ECF No. 27. On October 25, 2019, Defendants filed a Motion to Dismiss the Amended Complaint. ECF No. 30. Defendants also filed a motion for leave to file a DVD of the episode at issue as an exhibit to their Motion to Dismiss. ECF No. 32.

Plaintiff filed an Opposition to the Motion to Dismiss on November 8, 2019. ECF No. 34. On November 20, 2019, Plaintiff filed an Opposition to the motion for leave, ECF No. 35. Defendants filed a Reply in support of the Motion to Dismiss on November 22, 2019. ECF No. 36. On November 25, 2019, Plaintiff filed an additional brief opposing the motion for leave. ECF

No. 37. Defendants filed a Reply in support of the motion for leave on December 4, 2019. ECF

No. 38.

## II.    DISCUSSION

### A.  Motion for Extension of Time to Respond

The Court first briefly notes Defendants' Motion for Extension of Time to respond to the

Amended Complaint, ECF No. 23. The Motion is moot for practical purposes at this stage

because Defendants filed the response for which they sought an extension on October 25, 2019.

ECF No. 30. But the Court nonetheless pauses to note that Plaintiff's objections to the Motion

are meritless.

Plaintiff's Opposition argues that an extension is improper because "Defendants – unlike

the Plaintiff – are a mammoth-sized business with an arsenal of tools at its disposal." ECF No.

25 at 3.[2] Noting that Defendants filed their request the day before their response was originally

due, Plaintiff claims that "[t]he fact that Defendants waited to file the instant motion until one

day prior to the deadline is astounding." *Id.* Plaintiff also offers email communications with

Defendants' counsel indicating that counsel was retained two days prior to the due date. *Id.* at 2–

3. Plaintiff claims that Defendants' delay in obtaining representation was "an intentional act

without any apparent regard for the rules" and concludes that Defendants have not shown "good

cause" for an extension under Federal Rule of Civil Procedure 6(b)(1).

Plaintiff's attempt to make a scandal of Defendants' response to her suit ring hollow.

There is nothing remarkable about Defendants' routine request for an extension of time to

respond to the Amended Complaint. The Court sees no indication of impropriety in Defendants'

conduct and will not delve further into the specific interactions between counsel that the parties

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated
by that system.

have related. The Court will simply stress that parties should aim to exercise restraint in raising

disputes with the Court that have no bearing on the substance of litigation. In any case,

Defendants' Motion for Extension will be granted and Defendants' subsequent motions will be

treated as timely filed.

### B.  Motion to Dismiss

Defendants' Motion to Dismiss argues that each of Plaintiff's claims are time-barred and

meritless. ECF No. 30. As noted previously, the Amended Complaint includes four claims:

defamation, negligence, invasion of privacy, and intentional infliction of emotional distress. The

Court first considers the timeliness of each claim in light of Plaintiff's allegation that the episode

at issue first aired in or about March 2014. ECF No. 7 ¶ 13.

As an initial matter, the Court clarifies which jurisdiction's statutes of limitations apply.

Generally, "a federal court sitting in diversity jurisdiction must apply the choice of law rules of

the forum state to determine which state's law applies to the dispute." *Johnson-Howard v.*

*AECOM Special Missions Servs., Inc.*, 434 F. Supp. 3d 359, 370–71 (D. Md. 2020) (citing

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)). Because Plaintiff

has invoked this Court's diversity jurisdiction, *see* ECF No. 7 ¶ 2, the Court applies Maryland

choice of law rules to determine the law governing Plaintiff's claims.

Under those rules, "procedural matters are governed by Maryland law." *Johnson-*

Howard, 434 F. Supp. 3d at 371 (quoting *Gregoriou v. Explosives Experts, Inc.*, No. CCB-08-

384, 2008 WL 3989183, at *2 (D. Md. Aug. 25, 2008)). "In this choice of law context, Maryland

courts almost universally view issues pertaining to the statute of limitations as procedural, not

substantive." *Akinmeji v. Jos. A. Bank Clothiers, Inc.*, 399 F. Supp. 3d 466, 472 (D. Md. 2019)

(citing *Turner v. Yamaha Motor Corp., U.S.A.*, 591 A.2d 886, 887 (Md. App. 1991); *Doughty v. Prettyman*, 148 A.2d 438, 440 (Md. 1959)).

"The only exception to this rule under Maryland law is when the expiration of the statute of limitations period contained in the law of a forum state would terminate a plaintiff's right to maintain an action initiated pursuant to a foreign statute." *Id.* (citing *Turner*, 591 A.2d at 888). Here, Plaintiff has brought solely common law claims and the exception does not apply. Therefore, under Maryland's choice of law rules, the Court applies Maryland statutes of limitations to each of Plaintiff's claims.

### 1. Defamation

In her defamation claim, Plaintiff alleges that "Defendants' conduct, by way of statements and portrayals, constitute slander and libel." ECF No. 7 ¶ 31. Plaintiff points primarily to the allegedly false statements in the episode that Plaintiff and her late husband separated and divorced. *Id.* ¶ 33.

The statute of limitations for defamation in Maryland is one year. Md. Code Ann., Cts. & Jud. Proc. § 5-105; *see Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 456 (D. Md. 2014). The limitations period "begins to run 'when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff.'" *Watkins v. Wash. Post*, No. PWG-17-818, 2018 WL 805394, at *3 (D. Md. Feb. 9, 2018) (quoting *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 235 (D. Md. 1997)).

"In cases involving the mass media, the plaintiff reasonably should have known of the allegedly defamatory information when it is published." *Id.* (citing *Tani v. Wash. Post*, No. PJM-08-1130, 2009 WL 8652384, at *2 (D. Md. June 18, 2009)). Stated otherwise, "the publication dates, not the Plaintiff's actual discovery date, are the dates that trigger the statute of limitations

for mass media publications." *Id.* (citing *Tani*, 2009 WL 8652384, at \*2; *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 316 (Md. 1995)). In *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, Judge Chasanow of this Court recognized that this rule generally applies to allegedly defamatory television broadcasts. 566 F. Supp. 2d 460, 464 (D. Md. 2008) (citing *Shepard v. Nabb*, 581 A.2d 839, 843 (Md. App. 1990)); *see also State v. Brookins*, 844 A.2d 1162, 1173 (Md. 2004) (quoting *Buckley v. Valeo*, 424 U.S. 1, 19 (1976)) (drawing on U.S. Supreme Court precedent characterizing television and radio as "mass media").

Plaintiff does not contest that she reasonably should have known of the episode at the time it was originally broadcast in March 2014, more than five years before she filed suit. Instead, Plaintiff asserts that "Defendants caused the [episode] to be republished on multiple networks or media streams even as recent as 2019," and thereby "retriggered the period of limitations such that the clock began anew each time the [episode] aired," ECF No. 34 at 10. Plaintiff argues that while "Maryland courts are silent" on the issue, the Court should adopt a principle recognized in some jurisdictions that enables defamation claims stemming from a new publication of allegedly defamatory statements. *Id.* at 8.

Even if the Court adopted this doctrine, however, it would not render Plaintiff's defamation claim timely. In describing republication, Plaintiff principally points to the New York Court of Appeals' decision in *Firth v. State of New York*, 775 N.E.2d 463 (N.Y. 2002). The New York court there explained that "[r]epublication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'" 775 N.E.2d at 466 (quoting *Rinaldi v. Viking Penguin*, 420 N.E.2d 377, 382 (N.Y. 1981)). "Thus, for example, repetition of a

7

defamatory statement in a later edition of a book, magazine or newspaper may give rise to a new cause of action." *Id.*

Though Plaintiff only vaguely identifies the facts supporting her republication argument, Plaintiff presumably draws on allegations in the Amended Complaint that the episode is available through TVOne's "OnDemand" service and on its website. *See* ECF No. 7 ¶¶ 45, 61. But Plaintiff fails to explain how Defendants making the episode available through these means is anything other than "delayed circulation of the original edition." *Firth*, 775 N.E.2d at 466 (quoting *Rinaldi*, 420 N.E.2d at 382). Notably, courts interpreting republication doctrine in New York have stressed that "there is no republication where materials are 'qualitatively identical and published by the original libeler.'" *Zoll v. Jordache Enters., Inc.*, No. 01 Civ 1339(CSH), 2002 WL 31873461, at *9 (S.D.N.Y. Dec. 24, 2002) (quoting *David J. Gold, P.C. v. Berkin*, No. 00 Civ. 7940(AGS), 2001 WL 121940, at *4 (S.D.N.Y. Feb. 13, 2001)).

Plaintiff makes no allegation or argument that Defendants have modified the episode before making it available through the channels she references. Accordingly, republication doctrine as Plaintiff has presented it would not render her defamation claim timely even if the doctrine were recognized in Maryland law. The Court thus concludes that Plaintiff's defamation claim is barred by the statute of limitations.

### 2. Remaining Claims

The Court thus turns to Plaintiff's negligence, invasion of privacy, and intentional infliction of emotional distress claims. Maryland's three-year statute of limitations for civil actions applies to each of the claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101; *see Daniels v. Carter-Jones Lumber Co.*, No. 17-cv-00982-ELH, 2017 WL 5495959, at *3 (D. Md. Nov. 16, 2017) ("Under Maryland law, the statute of limitations for a negligence action is generally three

years."); *Melendez v. Bd. of Educ. for Montgomery Cty.*, No. DKC 14-3636, 2015 WL 3540947, at *11 (D. Md. June 3, 2015) (holding that claims of "intrusion upon Plaintiff's seclusion or solitude" and "invasion of privacy" were subject to the three-year statute of limitations); *Mason v. Capitol Office Sols.*, No. PJM 13-2290, 2014 WL 4825931, at *4 (D. Md. Sept. 23, 2014) (citing *Knickman v. Prince George's Cty.*, 187 F. Supp. 2d 559, 563–64 (D. Md. 2002) ("A three years statute of limitations applies to claims of wrongful discharge and intentional infliction of emotional distress.")).

Maryland law also holds that "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumden v. Design Tech Builders, Inc.*, 749 A.2d 796, 801 (Md. 2000)). The Maryland Court of Appeals has indicated that when a plaintiff brings other tort claims alongside a defamation claim, all of which arise from an allegedly tortious communication, each of the causes of action accrues together. *See Sears, Roebuck & Co v. Ulman*, 412 A.2d 1240, 1242 (Md. 1980) (holding that in an action alleging libel and negligence claims, "the cause of action for purposes of limitations, whether sounding in libel or negligence, accrues when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff").

Here, as noted previously, Plaintiff does not contest that she reasonably should have known of the episode at issue when it was originally broadcast in March 2014 and that her defamation claim accrued at that time under existing Maryland law. And Plaintiff makes no argument of any kind with respect to the statute of limitations for the remaining claims in her Opposition to the Motion to Dismiss. Seeing no basis to depart from basic principles of timeliness, the Court concludes that each of Plaintiff's remaining claims accrued at the time of

the episode's original broadcast and thus lapsed in March 2017, more than two years before Plaintiff filed her Complaint in this action.

Plaintiff's entire action is therefore time-barred and will accordingly be dismissed with prejudice. As a result, the Court need not consider and will deny as moot Defendants' motion to file a DVD of the episode as an exhibit to the Motion to Dismiss.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Extension of Time, ECF No. 23, and Motion to Dismiss Amended Complaint, ECF No. 30, while Defendants' Motion to File DVD of Program, ECF No. 32, will be denied as moot. Plaintiff's claims will be dismissed with prejudice. A separate Order shall issue.

Date: <u>July 7, 2020</u>                                          /s/_____
                                                                GEORGE J. HAZEL
                                                                United States District Judge

10